UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

REGINALD CAMPBELL,

  Plaintiff,

v.              CASE NO. 6:18-CV-2189-Orl-MAP

COMMISSIONER OF SOCIAL SECURITY,

  Defendant.
_____/

## **ORDER**

  This is an appeal of the administrative denial of disability insurance benefits (DIB). *See* 42 U.S.C. § 405(g). In this appeal, Plaintiff contends the ALJ erred by relying on testimony from the vocational expert (VE) that was not supported by substantial evidence. After considering the parties' joint memorandum of law (doc. 21) and the administrative record (doc. 10), I find that the ALJ's decision is supported by substantial evidence.

  A. *Background*

  Plaintiff Reginald Campbell was born on December 1, 1961, and has a high school education. He alleges disability beginning December 31, 2010, through his last date insured, December 31, 2014, due to heart disease, heart attack, and two heart surgeries; bilateral broken hips and arthritic pain; severe joint, arthritic and nerve pain in right shoulder; and a skull fracture resulting in headaches and sometimes forgetfulness (R. 241). From June 1986 through July 2009, Plaintiff worked as a law enforcement officer detective; he retired to care for his mother who was very ill. Unfortunately, his mother passed away on November 6, 2010, and Plaintiff suffered a heart attack on December 31, 2010. He asserts that following his heart attack, he could no longer

1

perform the duties of his job because the medications he took caused his body to weaken and previous injuries to flare-up causing pain that was at times unbearable (R. 242).

After a hearing, the ALJ found that Plaintiff suffers from the severe impairments of "ischemic heart disease, coronary artery disease, myocardial infarction, mitral regurgitation, carotid atherosclerosis, hypertension, hyperlipidemia, and obesity" (R. 13). The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 19). The ALJ determined that Plaintiff is not disabled, because he retains the RFC to perform light work with the following limitations:

> … he was incapable of walking on uneven terrain; he required a sit/stand option, allowing him to shift from either sitting and standing alternatively at-will, provided he did not leave the workstation and he was not off-task more than 10% of the work period; he was capable of rarely balancing and rarely climbing stairs and ramps but required a railing or something else to hold onto; he was incapable of climbing ladders, ropers, and scaffolds and was incapable of kneeling, crouching, and crawling; he was capable of occasionally stooping; he was incapable of reaching overhead with the right upper extremity but was capable of occasionally reaching in all other directions with the right upper extremity; he was incapable of operating foot controls with the bilateral lower extremities and was incapable of operating a motor vehicle for work; he was to avoid all exposure to hazards, including unprotected heights and moving mechanical parts; he was to avoid more than occasional exposure to excessive noise such as that in a typical retail or commercial establishment; he was to avoid more than occasional exposure to vibration and bright or flashing lights; and he would have been off task up to 10% of the workday due to an inability to maintain concentration.

(R. 14). With the assistance of a vocational expert (VE), the ALJ found that, with this RFC, Plaintiff could not perform his past relevant work as a police detective or security guard, but could perform jobs existing nationally including counter clerk, DOT 249.366-010 with 300,000 jobs in the national economy; furniture rental clerk, DOT 295.357.010 with 150,000 jobs in the national economy; and school bus monitor, DOT 372.667-042 with 20,000 jobs in the national economy

(R. 16-18). The AC denied review. Plaintiff, after exhausting his administrative remedies, filed this action.

  *B. Standard of Review*

  To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

  The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations. These regulations establish a "sequential evaluation process" to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

  C.  Discussion

All of Plaintiff's issues concern errors allegedly made at step five of the sequential analysis. At step five, the Commissioner must consider the RFC assessment combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Philips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R § 416.920(a)(4). Of course, if the claimant can make an adjustment to other work, a finding of not disabled is appropriate. *Id.* At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in significant numbers in the national economy which the claimant can perform, given his impairments. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson v. Barnhart*,

4

284 F.3d 1219, 1227 (11th Cir. 2002). In determining a claimant's ability to adjust to other work in the national economy, the ALJ may either apply the Medical Vocational Guidelines ("grids") or use a VE. *Phillips, supra,* at 1239-40. Typically, in a case like this one, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments, the ALJ must consult a VE. *Id.*

Plaintiff asserts the ALJ erred at step five by relying on testimony from the VE that was not supported by substantive evidence.[1] In particular, he raises three objections: 1) the ALJ erred by relying on the VE's testimony that there are 300,000 counter clerk jobs as that job involves tasks related to photo film processing and the need for such services has rapidly declined during the past thirty years; 2) the ALJ erred by relying on the VE testimony regarding the job of furniture store rental clerk since the VE cited the wrong DOT code for that job; and 3) the ALJ erred by finding him capable of performing the furniture store rental clerk and school bus monitor jobs that have duties he cannot perform with a sit/stand option. Although all three issues concern the ALJ's step five determination that Plaintiff can perform other work, for clarity I will address them separately.

First, however, I note that at the administrative hearing, Plaintiff's council stipulated to the VE's qualifications (R. 51) and did not question the VE about the job numbers available in the national economy. Plaintiff's counsel questioned the VE about whether "repetitive switching from sitting and standing, at such a short interval of five to ten minutes would [ ] be a problem for maintaining employment?" (R. 54), the VE answered that "No. As long as he was able to complete

---

[1] As the Commissioner points out, Plaintiff's assertion that substantial evidence does not support the VE's testimony is misplaced. Instead, as set forth above, the relevant inquiry is whether substantial evidence supports the disability decision of the ALJ who relied on VE testimony at step five of the sequential analysis.

the job at hand, he could manipulate, move around, as necessary" (R. 54). The VE explained that her testimony about overhead reaching and the sit/stand option were both based on her knowledge and experience as a vocational expert (R. 55). Following the ALJ's decision, in a written request for Appeals Council review, Plaintiff's counsel complained about a number of ALJ errors, but did not complain about Plaintiff's inability to do the jobs of furniture rental clerk or bus monitor with a sit/stand option or about the number of counter clerk or furniture rental clerk jobs available.[2]

   1. *Number of counter clerk jobs*

Plaintiff questions the VE's testimony that there are 300,000 counter clerk jobs available in the national economy. He admits that generally the ALJ may rely on the testimony of a VE, but says the ALJ should reject testimony that "defies reason." Asserting the job involves tasks related to photo film processing and the need for such services has rapidly declined during the past thirty years, Plaintiff contends the ALJ erred by accepting the VE's testimony about the number of counter clerk jobs available "at face value."[3] In support, Plaintiff cites an Eastern District of North Carolina decision that found a lack of substantial evidence to support the testimony from a vocational expert that the job of photofinishing counter clerk remains a viable occupation in the

---

[2] In the request for Appeals Council review, Plaintiff's counsel stated that the ALJ failed to consider the totality of the evidence when he assessed the severity of Plaintiff's medical conditions; that his decision was inconsistent in that he found Plaintiff suffered a heart attack but that his cardiac condition had improved since the onset date; that the ALJ failed to find Plaintiff's degenerative disc disease of the lumbar spine and rotator cuff impingement were severe impairments prior to Plaintiff's last date of insured status, and that the ALJ concluded he was capable of performing other work despite the VE testimony that there are no jobs Plaintiff could perform if he had to miss at least three days of work per month (R. 218-222).

[3] To the extent that Plaintiff asserts the ALJ was responsible for verifying or questioning the VE's testimony, this circuit holds that the ALJ is only required to do so when there is a conflict between the VE's testimony and the DOT. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1365 (11th Cir. 2018). Here, the alleged conflict is between the number of jobs available as reported by the VE and the Plaintiff's assertion that the need for counter clerks has declined in light of the decreased need for film processing services due to the widespread use of digitalized cameras and smart phones. Plaintiff does not assert that the VE's testimony conflicts with the DOT.

current economy. *Boston v. Colvin*, 2016 WL 721563 (E.D. N.C. 2016). *Boston* is not binding here, and in addition it is distinguishable from this case because *Boston*'s counsel had cross-examined the VE regarding the basis for her job numbers and "on cross-examination [the VE] admitted that she did not, in fact, know how many jobs existed in [the DOT occupations she cited]." Thus, the court concluded that the VE's testimony did not constitute substantial evidence to support the ALJ's step five determination. *Boston*, 2016 WL 721563, at *13.

In contrast, here the ALJ did not err by relying on the VE's testimony that there are 300,000 counter clerk jobs. As the Commissioner asserts, the applicable regulation provides that the VE is the expert on issues such as the number of jobs that exist in the national economy. *See* 20 C.F.R. § 404.1566(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist"). VE Melissa Williamson's resume shows she is particularly qualified as she has a master's degree in rehabilitation counseling and is a certified rehabilitation counselor. Her resume reflects that she utilizes her expertise in labor market availability, job placement, and job analysis to determine job availability (R. 359-61). Unlike in *Boston*, at the administrative hearing, Plaintiff's council stipulated to the VE's qualifications (R. 51) and did not question the VE about the job numbers available in the national economy. Nor did counsel address these issues in his request for Appeals Council review. Even in his memorandum to this Court, Plaintiff has not presented any evidence to contradict the VE's testimony regarding the number of counter clerk jobs. Plaintiff's speculation that there may be less jobs is insufficient to overcome the testimony of the VE.

Both the United States Supreme Court and the Eleventh Circuit have recently addressed the ALJ's reliance on VE testimony about the number of other jobs available to claimants. In

*Biestek v. Berryhill,* the Supreme Court held that if a claimant does not demand the underlying evidence supporting a VE's testimony, the VE's "testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek*, __ U.S. __, 139 S.Ct. 1148, 1155 (11th Cir. 2019). In *Webster v. Comm'r of Soc. Sec.*, the Eleventh Circuit stated:

> The VE's testimony—based on this own experience of having completed supervisor surveys for the specific jobs for which he found Webster qualified, his knowledge of the industry, and the Dictionary of Occupational Titles ("DOT")—constituted 'substantial evidence' that there were a significant number of jobs that existed in the national economy that Webster could perform. Webster's argument that the Standard Occupational Classification ("SOC") code job numbers reported by the Bureau of Labor Statistics demonstrate that the VE's testimony was unreliable is unavailing. First, during the hearing, Webster did not question the VE's qualifications and the questions he posed to the VE did not address his present concerns about the reliability of the VE's testimony. Moreover, the VE's testimony indicated that he relied on his own experience of surveying employers as well as the DOT. The VE properly considered the hypothetical scenario that the ALJ presented concerning an individual with the same impairments as Webster.

*Webster*, 773 Fed. App'x.553 (11th Cir. 2019).[4] Notably, the Eleventh Circuit has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant number' under the statute and regulations." *Atha v. Comm'r of Soc. Sec.,* 606 Fed. App'x 931, 934 (11th Cir. 2015) (quoting *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987)). As the *Atha* court held, although the ALJ bears the burden to identify jobs in the national economy that a plaintiff can perform, "the ALJ need not identify a certain number of jobs for its decision to be supported by substantial evidence." *Id*. *See e.g. Brooks v. Barnhart*, 133 Fed. App'x. 669, 671

---

[4] Citing *Webster*, one court in this district has concluded that the ALJ's step five finding made in reliance on job numbers supplied by the VE was not supported by substantial evidence. *Haskins-Scott v. Saul*, case no. 6:18-cv-975-Orl-CPT, 2019 WL 3956195 (M.D. Fla. Aug. 22, 2019). In *Haskins-Scott*, however unlike this case, counsel for the claimant had objected to the VE's testimony about the number of jobs. In remanding the case for further administrative proceedings, the *Haskins-Scott* court admittedly distinguished the case from other cases in which courts rejected challenges to VE testimony where claimants had not challenged the VE's qualifications or questioned the VE on the reliability of the job numbers offered at the hearing. *Haskins-Scott*, at *4.

(11th Cir. 2005) ("ALJ's finding that 840 polisher, document preparer, and bonder jobs constituted a significant number in the national economy is supported by substantial evidence."); *Boggs v. Berryhill*, case no. 8:18-cv-148-T-AEP, 2019 WL 1324620, * 5 (M.D. Fla. March 25, 2019) ("Though the VE may have identified an overinclusive number of jobs here, Plaintiff's contentions [of 3,500 jobs] still support a significant number of jobs. Reversing and remanding this case to revise that numerical figure for a better approximation would end in the same determination—a finding that the Plaintiff is not disabled"); *Pace v. Berryhill,* case no. 8:17-cv-181-T-JRK, 2018 WL 1517119, *4 (M.D. Fla. 2018) (finding where plaintiff's counsel did not cross-examine VE about the jobs available to plaintiff or otherwise question the VE, ALJ did not err in relying on VE's testimony about number of jobs available). Hence, I find substantial evidence supports the ALJ's decision that a significant number of counter clerk jobs exist in the national economy that Plaintiff can perform.

### 2. *DOT number for furniture rental clerk job*

The Commissioner agrees that the VE testified as to the wrong DOT code 295.357-010 and that the correct DOT code is 295.357-018. As the Commissioner suggests, reversal is not warranted since the ALJ's decision that Plaintiff can perform the job of furniture rental clerk is still supported by substantial evidence notwithstanding this harmless error. *See Hunter v. Comm'r of Soc. Sec.*, 609 Fed. App'x 555, 557 (11th Cir. 2015) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination."). Other courts have similarly concluded that an ALJ's citation to a wrong DOT code is a simple mistake and not outcome determinative. Even assuming the reference to the wrong DOT code is more than a simple mistake, because the ALJ identified two other jobs Plaintiff can perform, the error is clearly a harmless one. *See generally Alie v. Berryhill*, case no. 4:16-cv-1353-JMB, 2017 WL 2572287, n.11 (E.D. Mo.

2017) (finding ALJ's citation to wrong DOT code for laundry worker harmless because mistake was not outcome determinative); *Barrett v. Colvin*, case no. 14-8838 KES, 2015 WL 5796996, n.1 (C.D. Cal. 2015) (finding VE's reference to wrong DOT code "akin to a typographical error, and does not affect the Court's analysis"); *Roman v. Colvin*, case no. 13-cv-03215-RBJ, 2015 WL 1345430, *6 (D. Co. 2015) (VE and ALJ both cited wrong DOT number for final assembler job but harmless error because only one of the three final assembler jobs is a sedentary job is was clear which job the VE was referring to in the DOT); *Rutherford v. Astrue*, case no. 3:10-cv-0376, 2011 WL 4014431, *19-20 (M.D. TN 2011) (finding VE's citation to DOT code for pricing clerk rather than court clerk harmless error where nothing in record indicated either VE or ALJ thought pricing clerk job appropriate for plaintiff and where VE identified a significant number of available jobs for plaintiff in addition to the 900 pricing clerk positions); *Ratliff v. Astrue*, case no. 1:09CV00020, 2009 WL 5033926, *4 (W.D. Va. 2009) (finding "mistakes were insignificant" where VE supplied a non-existent DOT number for a job and the VE used wrong DOT number for specific job title).

### *3. Sit/stand option*

Plaintiff posits that given his sit/stand option, he cannot perform the job duties of a furniture rental clerk or school bus monitor. Per the DOT, a furniture rental clerk's duties include guiding or accompanying customers through the show room. Per the DOT a school bus monitor's duties include monitoring the conduct of students on the school bus to maintain discipline and safety; directing loading of students on the bus to prevent congestion and unsafe conditions; riding the school bus to prevent altercations between students and damage to the bus; and participating in school bus safety drills. Plaintiff asserts "it would be impossible" for him to perform these tasks with a sit/stand option. In response, the Commissioner states that the DOT does not address the

availability of jobs with a sit/stand option, and the VE testified about her opinion that Plaintiff could perform these jobs, the ALJ appropriately reliance on the VE's testimony. I agree.

At the administrative hearing, Plaintiff's counsel questioned the VE about whether "repetitive switching from sitting and standing, at such a short interval of five to ten minutes would [ ] be a problem for maintaining employment?" (R. 54). The VE answered, "No. As long as he was able to complete the job at hand, he could manipulate, move around, as necessary" (R. 54). The VE explained that his testimony about overhead reaching and the sit/stand option were both based on his knowledge and experience as a vocational expert (R. 55). The DOT's silence on the availability of jobs with a sit/stand option means that there is not "apparent conflict" with the VE's testimony. And, in any event, the VE's testimony (cited above) resolved any possible conflict. I find the ALJ properly relied on the VE's testimony that Plaintiff could perform the jobs of furniture rental clerk and bus monitor. *Bryant v. Comm'r of Soc. Sec.*, 451 Fed. App'x. 838, 839 (11th Cir. 2012) (ALJ may properly rely on VE's knowledge or expertise at step five); *See e.g. Lewis v. Comm'r of Soc. Sec.*, case no. 3:18-cv-411-J-PDB, 2019 WL 4727814, *6 (M.D. Fla. Sept. 27, 2019) (finding ALJ properly relied on VE's testimony that claimant could perform specified jobs with sit/stand option where VE explained her 25 years of experience in vocational rehabilitation, interviewing clients, and conducting labor market studies provided reasonable basis for ALJ's reliance); *Pierce v. Saul,* case no. 8:18-cv-1681-T-AEP, 2019 WL 4439867, *4 (M.D. Fla. Sept. 17, 2019) (finding ALJ properly relied on VE's testimony that claimant whose RFC included a sit/stand option could perform the job of photocopy operator or scanner operator where VE testified that the DOT lacked a sit/stand option and that she based her testimony of the body of rehabilitation research and studies and Department of Labor publications and 33 years of experience doing job placement and as an occupational analyst in the field).

This Court's task is simply to determine whether substantial evidence supports the ALJ's decision, not to substitute its judgment for that of the Commissioner. To the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot. *Winschel*, 631 F.3d at 1178.. *See Biestek, supra,* 139 S.Ct. at 1154 ("substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Where, as here, the ALJ's step five findings are supported by substantial evidence, I must affirm his decision.

D.    *Conclusion*

For the reasons stated above, it is ORDERED:

(1) The Commissioner's decision is AFFIRMED; and

(2) The Clerk of Court is directed to enter judgment for the Defendant and close the case.

DONE and ORDERED in Tampa, Florida on December 2, 2019.

*[signature: Mark A. Pizzo]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE